**FOR PUBLICATION**



ATTORNEY FOR APPELLANT:

**STEVEN P. POLICK**
Polick P. Polick & Associates, P.C.
Griffith, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**FRANCES BARROW**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| DONALD R. WALKER, D.D.S., | ) | |
| | ) | |
| Appellant-Petitioner, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1307-MI-593 |
| | ) | |
| STATE BOARD OF DENTISTRY, | ) | |
| | ) | |
| Appellee-Respondent. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Theodore M. Sosin, Judge
Cause No. 49D02-1211-MI-44681

**March 13, 2014**

**OPINION - FOR PUBLICATION**

**BARNES, Judge**

**Case Summary**

Donald Walker, D.D.S., appeals the trial court's denial of his petition for judicial review of a decision by the State Board of Dentistry ("the Board"). We affirm.

**Issues**

Dr. Walker raises two issues, which we restate as:

I. whether the Board properly found that Dr. Walker violated Indiana Code Section 25-1-9-4(a)(3) by failing to provide continual and direct supervision to Patient A; and

II. whether the Board properly found that Dr. Walker violated Indiana Code Section 25-1-9-4(a)(4)(B) by using the "hand over mouth" technique on Patient A.

**Facts**

Dr. Walker is a dentist licensed in Indiana. Patient A[1] saw Dr. Walker in September 2008 to have her wisdom teeth extracted. When she woke after the surgery, Patient A had a "strange feeling that [she] couldn't breathe." App. p. 97. She felt like she was "gasping for air." Id. Dr. Walker's dental hygienist told Patient A that she could "breathe just fine and that [she] needed to stop, because [she] was scaring other patients." Id. Dr. Walker then placed his hand over Patient A's mouth and held it there for a few seconds. Patient A was "really scared" by Dr. Walker's actions. Id.

Two hygienists then helped Patient A to another room, where they left her on a bench. According to Patient A, no one remained in the room with her. Patient A was "drowsy from the sedation" and tried to lay down on the bench so that she would not fall

---

[1] At the time of the hearing before the Board in October 2012, Patient A testified that she was twenty-five years old.

off. Id. at 98. Patient A's husband picked her up at the office's back door. Patient A felt like "they were rushed to get [her] out of there and away from the other patients." Id. Patient A was sobbing and wrote a note to her husband explaining what had happened. Patient A went to a different dentist for the follow-up care.

Patient A filed a complaint with the Attorney General's Consumer Protection Division ("CPD"). In October 2011, the CPD filed a complaint with the Board against Dr. Walker. A hearing was held before the Board in October 2012. The issues before the Board concerned Dr. Walker's use of the "hand over mouth" technique on Patient A and whether Patient A was properly observed after the surgery. After a hearing, the Board found:

10. When Patient A awoke from the sedation, she felt like she could not breathe. Patient A became apprehensive and excited. Patient A was told that her behavior was scaring other patients.

11. Respondent then placed his hand over Patient A's mouth, a technique known as "hand over mouth," in order to quiet Patient A. This evoked feelings of fear in Patient A.

12. The "hand over mouth" technique was previously taught in dental school and accepted within the dental community for pediatric patients up until the 1980s. The "hand over mouth" technique is not current professional theory or practice for use on adult patients.

13. At some point during Patient A's recovery, she was moved to another room which Respondent's staff referred to as the "holding" room. This room had a door which led to a parking lot where patients were picked up following surgery. Patient A was placed on

3

a bench in this room, and Patient A reported that she almost fell off the bench.

14. Respondent's staff testified that an assistant or hygienist remained with the patient while in the "holding room" by either standing beside the patient or observing from an adjacent room while providing treatment to another patient.

15. Direct supervision is not being provided[,] however, when the hygienist is in an adjacent room while providing treatment to another patient.

16. The only individual with credible testimony and personal knowledge who testified as to whether Patient A, in particular, remained under direct and continuous supervision in the "holding" room was Patient A. Patient A testified that no one remained in the room with her.

## ULTIMATE FINDINGS OF FACT

1. Respondent violated Ind. Code § 25-1-9-4(a)(3) in that Respondent violated 828 IAC 3-1-6.5(c)(10), by failing to provide continual and direct supervision by a person trained in basic cardiac life support to Patient A, as evidenced by the fact that Patient A was not provided continual and direct supervision in Respondent's "holding" room.

2. Respondent violated Ind. Code § 25-1-9-4(a)(4)(B) in that Respondent has continued to practice although he has become unfit to practice due to his failure to keep abreast of current professional theory or practice as evidenced by the fact that he used, and continues to use, the "hand over mouth" technique on adult patients, including Patient A.

App. pp. 10-12. The Board ordered certain sanctions, including the imposition of an indefinite probation and fines and costs.

4

Dr. Walker filed a petition for judicial review. After briefs were filed and a hearing was held, the trial court issued findings of fact and conclusions thereon denying Dr. Walker's petition. The trial court found there was substantial evidence to find that Dr. Walker knowingly violated 828 IAC 3-1-6.5(c)(10) by failing to provide continual and direct supervision of Patient A by a person trained in basic cardiac life support. The trial court refused to reweigh the evidence or judge Patient A's credibility and found that the Board's interpretation of the phrase "continual and direct supervision" was reasonable. Id. at 70. Further, the trial court found there was substantial evidence to find that the "hand over mouth" technique was not "current professional theory or practice." Id. at 72. The trial court noted that the Board could accept the opinion of one expert over another. Dr. Walker now appeals.

**Analysis**

In an appeal involving a decision of an administrative agency, our standard of review is governed by the Administrative Orders and Procedures Act ("AOPA"), and we are bound by the same standard of review as the trial court. Dev. Servs. Alternatives, Inc. v. Indiana Family & Soc. Servs. Admin., 915 N.E.2d 169, 176 (Ind. Ct. App. 2009), trans. denied. We do not try the case de novo and do not substitute our judgment for that of the agency. Musgrave v. Squaw Creek Coal Co., 964 N.E.2d 891, 899 (Ind. Ct. App. 2012), trans. denied. We will reverse the administrative decision only if it is: (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) contrary to a constitutional right, power, privilege, or immunity; (3) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; (4) without observance of

5

procedure required by law; or (5) unsupported by substantial evidence. Ind. Code § 4-21.5-5-14.

Courts that review administrative determinations are prohibited from reweighing the evidence or judging the credibility of witnesses and must accept the facts as found by the administrative body. Indiana State Bd. of Educ. v. Brownsburg Cmty. Sch. Corp., 865 N.E.2d 660, 665-66 (Ind. Ct. App. 2007). A court may not substitute its judgment for that of the agency. Id. Additionally, a court may not overturn an administrative determination merely because it would have reached a different result. Id. An interpretation of statutes and regulations by an administrative agency charged with the duty of enforcing those regulations and statutes is entitled to great weight unless this interpretation would be inconsistent with the law itself. Id. at 665. The reviewing court should generally accept an agency's reasonable interpretation of regulations and statutes. Id. Although an appellate court grants deference to an administrative agency's findings of fact, no such deference is accorded to its conclusions of law. Musgrave, 964 N.E.2d at 899-900 (citing LTV Steel Co. v. Griffin, 730 N.E.2d 1251, 1257 (Ind. 2000)). The burden of demonstrating the invalidity of the agency action is on the party who asserts the invalidity. Id. at 900.

### I. Failure to Continually and Directly Supervise

Indiana Code Section 25-1-9-4(a) provides:

> A practitioner shall conduct the practitioner's practice in accordance with the standards established by the board regulating the profession in question and is subject to the exercise of the disciplinary sanctions under section 9 of this chapter if, after a hearing, the board finds . . . (3) a

6

> practitioner has knowingly violated any state statute or rule, or federal statute or regulation, regulating the profession in question.

The Board found that Dr. Walker violated 828 IAC 3-1-6.5(c)(10), which governs the use of general anesthesia and deep sedation by dentists and provides: "At the completion of the anesthetic when continuous monitoring is no longer required, the patient must be transferred to a recovery facility for continual and direct supervision by a person trained in basic cardiac life support." The Board found that Dr. Walker did not provide "continual and direct supervision" of Patient A while she was in the holding room.

On appeal, Dr. Walker argues that the Board applied the wrong definition to the phrase "direct supervision." According to Dr. Walker, the Board should have applied the definitions of "direct supervision" listed in Indiana Code Section 25-13-1-2(i), which provides: "'Direct supervision' means that a licensed dentist is physically present in the facility when patient care is provided by the dental hygienist," and Indiana Code Section 25-14-1-1.5(5), which provides: "'Direct supervision' means that a licensed dentist is physically present in the facility when patient care is provided by the dental assistant." However, we note that these definitions occur in chapters dealing with "Regulation of Dental Hygienists by State Board of Dentistry," Ind. Code Chapter 25-13-1, and "Regulation of Dentists; Creation of Board," Ind. Code Chapter 25-14-1. The remaining statutes in those chapters make it clear that the "direct supervision" definitions apply to the supervision of a dental hygienist or dental assistant by a licensed dentist. The definitions simply have no applicability to the supervision of a patient following the administration of an anesthetic.

7

The phrase "continual and direct supervision" as used in 828 IAC 3-1-6.5(c)(10) is not defined. The Board concluded that the phrase "continual and direct supervision" was not being provided, "however, when the hygienist is in an adjacent room while providing treatment to another patient." App. p. 11. We must determine whether the Board's interpretation of the regulation is reasonable. Brownsburg Cmty. Sch. Corp., 865 N.E.2d at 665. The Board's interpretation is "entitled to great weight unless this interpretation would be inconsistent with the law itself." Id. The purpose of 828 IAC 3-1-6.5(c)(10) is to require supervision over the patient while the patient recovers. If a hygienist is in another room providing care for another patient, the recovering patient does not have adequate supervision in the event of an emergency, i.e., a fall or adverse reaction to the anesthesia. We conclude that the Board's interpretation of the regulation is reasonable.

Dr. Walker also argues that the Board's finding that he violated the rule is not supported by substantial evidence.[2] Evidence was presented that it was common procedure in Dr. Walker's office to take the patient to the "holding room" to wait on their

---

[2] Dr. Walker argues that the Board failed to make findings of fact regarding whether he "knowingly" violated the rule. Dr. Walker did not make this argument to the trial court. Rather, he merely argued that substantial evidence did not exist to show a knowing violation. An appellant may not raise an issue on appeal that was not first presented to trial court. Sullivan v. City of Evansville, 728 N.E.2d 182, 191 (Ind. Ct. App. 2000). Consequently, this argument is waived.

We also note that Dr. Walker relies on Indiana State Bd. of Health Facility Adm'rs v. Werner, 841 N.E.2d 1196, 1207 (Ind. Ct. App. 2006), clarified on reh'g, 846 N.E.2d 669 (Ind. Ct. App. 2006), trans. denied, which noted that, "although the Board's findings and conclusions reference [the language of Indiana Code Section 25-1-9-4(a)], it does not appear that there is a finding that Werner knowingly violated the regulations or that she has become unfit to practice due to her failure to keep abreast of current professional theory or practice." Dr. Walker claims that "[t]he Appellate Court thereupon found that the Board's decision was 'arbitrary and capricious,' and remanded the case back to the Board for further proceedings." Appellant's Br. p. 13. However, this court found the Board's decision arbitrary and capricious on a completely different basis. The failure to find a "knowing" violation played no part in the decision to remand. Consequently, we do not find Werner persuasive.

8

ride when the patient was ready to leave. App. p. 121. Typically, one of the assistants would stay with the patient in the holding room or the hygienist across the hall would watch the patient while the hygienist was treating another patient. Dr. Walker confirmed that procedure was used.[3] Id. at 134. None of Dr. Walker's staff testified as to the procedure used when Patient A was placed in the holding room. As the Board noted, the only testimony regarding Patient A's experience in the holding room was given by Patient A, who testified that she was left alone in the holding room for several minutes and that no one checked on her.

The evidence established that Dr. Walker was aware that patients in the holding room were sometimes supervised by a hygienist who was across the hall treating another patient. Further, Patient A testified that she was left alone in the holding room, and the Board found her credible. We cannot reweigh the evidence or judge the credibility of the witnesses. We conclude that the Board properly found that Dr. Walker violated 828 IAC 3-1-6.5(c)(10) by knowingly failing to provide "continual and direct supervision by a person trained in basic cardiac life support" to a recovering patient.

---

[3] Dr. Walker repeatedly argues that there was no evidence he was aware that one of his assistants was not in the holding room with the patient. However, during his testimony, the following discussion occurred:

> Dr. Burns: According to the testimony given by several different people the hygienist might be in the other room watching them. So that's considered not alone?
> The Respondent: No. That's not considered not alone. . . .
> Dr. Burns: That's not my question. I asked if that is considered not alone. The hygienist is working on a patient and watching through the door. Is that what happened?
> The Respondent: Yes. She can –

App. p. 134. He also argues that the dental hygienist watching from another room on one occasion does not establish a policy or practice. See Appellant's Reply Br. p. 8. However, the testimony of dental assistant Sherry Cline made it clear that the practice was not uncommon. App. pp. 122-23.

## II. Use of Hand Over Mouth Technique

Indiana Code Section 25-1-9-4(a) provides:

> A practitioner shall conduct the practitioner's practice in accordance with the standards established by the board regulating the profession in question and is subject to the exercise of the disciplinary sanctions under section 9 of this chapter if, after a hearing, the board finds . . . (4) a practitioner has continued to practice although the practitioner has become unfit to practice due to . . . (B) failure to keep abreast of current professional theory or practice.

The Board found that Dr. Walker used the "hand over mouth" technique on Patient A and that, although this technique was "previously taught in dental school and accepted within the dental community for pediatric patients up until the 1980s," the technique "is not current professional theory or practice for use on adult patients." App. p. 11.

Dr. Walker does not dispute that he used the technique on Patient A. Dr. Walker testified that he did not recall using the hand over mouth technique on Patient A but that he "[m]ost likely" did so. App. p. 131. Patient A also testified that Dr. Walker put his hand over her mouth after the surgery. On appeal, Dr. Walker argues that there was no substantial evidence to support the finding that the hand over mouth technique demonstrates an unfitness to practice or a failure to keep abreast of current professional theory or practice. Specifically, Dr. Walker argues that no evidence was presented that the technique was inappropriate for an adult patient and that no "authoritative medical literature" was presented to demonstrate that the technique was not current accepted professional theory or practice. Appellant's Br. p. 18.

At the hearing, several oral surgeons testified regarding the hand over mouth technique. Dr. Corbin Partridge testified that patients often panic after surgery. He testified that the hand over mouth technique is used on children sometimes but that he had never seen it used on an adult. He also testified that he had never used the technique on a child or an adult. Dr. John Challman testified that the hand over mouth technique was taught in the 1970's to calm screaming children. However, he had never used the technique on a child or an adult. Dr. Hal Smith testified that the hand over mouth technique was "an accepted and legitimate technique" on both children and adults. App. p. 118. However, he testified that the practice was "[p]robably not" being taught at dentistry schools anymore but that the "old-timers" knew about it. Id. Dr. Jamie Lemna testified that he learned the hand over mouth technique during his training at Riley Hospital in the 1980's and that the technique was "commonly used" in pediatric dentistry. Id. at 120.

Despite Dr. Walker's argument, we conclude that evidence was presented at the hearing that supported the Board's findings. The Board was presented with evidence that the technique was taught for use on children as late as the 1980's. However, the experts gave conflicting testimony on the technique's use on adults. The Board was free to believe one expert over another, and we cannot reweigh the evidence or judge the credibility of witnesses. Dr. Walker cites no authority for his argument that authoritative medical literature was required. We conclude that substantial evidence supports the Board's finding that the hand over mouth technique is not current professional theory or practice for use on adult patients. Consequently, substantial evidence supports the

11

Board's finding that Dr. Walker violated Indiana Code Section 25-1-9-4(a)(4)(B) by using the "hand over mouth" technique on Patient A.

## Conclusion

The trial court properly denied Dr. Walker's petition for judicial review regarding the Board's findings and conclusions thereon. We affirm.

Affirmed.

ROBB, J., and BROWN, J., concur.