

**FILED**

Apr 14 2020, 8:21 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANTS

Mark J. Crandley
Barnes & Thornburg LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
INDIANA DEPARTMENT OF
NATURAL RESOURCES

Curtis T. Hill, Jr.
Attorney General

Frances Barrow
Deputy Attorney General
Indianapolis, Indiana

ATTORNEY FOR APPELLEES
WALTER B. WOODHAMS AND
DOROTHY WOODHAMS, ET AL.

Anthony R. Spahr
Peru, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Miami County and Miami County Board of Commissioners, | April 14, 2020 |
| *Appellants-Petitioners,* | Court of Appeals Case No. 19A-MI-2099 |
| v. | Appeal from the Marion Superior Court |
| Indiana Department of Natural Resources, | The Honorable Patrick J. Dietrick, Judge |
| *Appellee-Respondent,* | The Honorable Therese Hannah, Commissioner |
| and | Trial Court Cause No. 49D12-1806-MI-25827 |

Walter B. Woodhams and
Dorothy Woodhams, et al.,

*Appellees-Statutory Parties*

**Crone, Judge.**

# Case Summary

In Miami County, a developer built a subdivision with dams, and he dedicated easements on top of the dams for public roads. The Miami County Commissioners ("the Commissioners") accepted the roads into the county highway system and obligated the county to maintain them. Almost a decade later, the Indiana Department of Natural Resources ("the DNR") sent notices of violation of the Dam Safety Act ("the Act") to Miami County ("the County")[1] and the owners of the property upon which six of the dams are located ("the Owners"), including Walter B. and Dorothy Woodhams. The notices include findings that the County and the Owners are the owners of the dams, that the dams are unsafe, and that the County and the Owners are required to fulfill their statutory duty to maintain the dams in a safe condition. Both the County and the Owners asked the Indiana Natural Resources Commission ("the NRC") to review the DNR's finding that they are the owners of the dams. The NRC issued an order finding that the County is an owner of

---

[1] Where appropriate, we also refer to the Commissioners and the County collectively as "the County."

the dams, as defined by the Act, but only to the extent of its obligation to maintain the roads, and that the Owners are also owners of the dams and are jointly and severally responsible for repairing or reconstructing them. Both the County and the Owners petitioned for judicial review of the NRC's decision. The trial court issued an order finding that the County is an owner of the dams and is solely responsible for repairing or reconstructing them.

[2] The County now appeals, arguing that it is not an owner of the dams and therefore is not responsible for repairing or reconstructing them. We agree and therefore reverse and remand for further proceedings.

## Facts and Procedural History

[3] The relevant facts are undisputed. Around 1990, Russ Bellar began developing property in Miami County that became the Hidden Hills subdivision. Bellar constructed seven dams to make recreational lakes for the subdivision's residents. In the subdivision plats, Bellar dedicated sixty-foot easements to be used for public roads, some of which were constructed on top of the dams. The Commissioners approved Bellar's plats. In 2005, the Commissioners adopted a resolution accepting the subdivision's roads into the county highway system and obligating the County to maintain them.

[4] In 2014, the DNR issued notices of violation of the Act to the County and the Owners, who have fee-simple title to the property upon which six of the dams are located. The notices include findings that the County and the Owners are the owners of the dams, that the dams are unsafe, and that the County and the

Owners are required to take certain actions to fulfill their statutory duty to maintain the dams in a safe condition.[2] Both the County and the Owners asked the NRC to review the DNR's finding that they are the owners of the dams.[3]

[5] The Act defines "owner" as

> an individual, a firm, a partnership, a copartnership, a lessee, an association, a corporation, an executor, an administrator, a trustee, the state, an agency of the state, a municipal corporation, a political subdivision of the state, a legal entity, a drainage district, a levee district, a conservancy district, any other district established by law, or any other person who has a right, a title, or an interest in or to the property upon which the structure [i.e., the dam and its appurtenant works[4]] is located.

Ind. Code § 14-27-7.5-4. After a hearing, the NRC issued an order finding that the County is an owner of the dams by virtue of its easement interest in the roads on top of the dams and is "only liable for the aspects of a roadway [dam's] repair, reconstruction, decommissioning and maintenance reasonably necessary to fulfill its authority and obligation to construct, repair and maintain

---

[2] *See* Ind. Code § 14-27-7.5-7(a) ("The owner of a structure shall maintain and keep the structure in the state of repair and operating condition required by the following: (1) The exercise of prudence. (2) Due regard for life and property. (3) The application of sound and accepted technical principles.").

[3] The County filed a motion for summary judgment as to whether it is an owner of the dams, which the NRC denied. The Owners assert that the County failed to exhaust its administrative remedies, and therefore waived its right to bring this appeal, because it did not appeal that interlocutory order. The Owners cite no relevant authority for this assertion. *Cf. Bojrab v. Bojrab*, 810 N.E.2d 1008, 1014 (Ind. 2004) ("A claimed error in an interlocutory order is not waived for failure to take an interlocutory appeal but may be raised on appeal from the final judgment.").

[4] *See* Ind. Code § 14-27-7.5-5 (defining "structure").

a public road traversing the roadway dam." Appellants' App. Vol. 2 at 88.[5] The order further finds that the Owners, "who are the fee title owners of one or more of the dams are jointly and severally liable for the repair, reconstruction, decommissioning and maintenance of the dam for which they hold fee title." *Id.*[6]

[6] Both the County and the Owners petitioned for judicial review of the NRC's decision. After a hearing, the trial court issued an order that states,

> The Hidden Hills streets, … accepted into the Miami County highway system, bestowed upon the County title to an easement in the streets which is sufficient to constitute ownership in the dams. I.C. § 14-27-7.5-4. The County became an owner when it accepted the roads into the county highway system. That the now-crumbling dams upon which the accepted roads were built are a burden, should have been contemplated by the parties when the easement was acquired. The county cannot reject their [sic] ownership interest in the roads, accepted over twenty years ago, simply because the underlying dams are now in the state of disrepair.
>
> The County accepted the duty to maintain the roads when it accepted the roads into the county highway system. This maintenance also includes the responsibility to maintain the

---

[5] Indiana Appellate Rule 50(C) provides that an appendix's "table of contents shall specifically identify each item contained" in the appendix. For nine of the County's eleven appendix volumes, the table of contents identifies only the administrative record volume number, which has made searching for specific documents unnecessarily burdensome. "For future reference, tables of contents for appendices must be more detailed." *Harrison v. Veolia Water Indianapolis, LLC*, 929 N.E.2d 247, 248 n.1 (Ind. Ct. App. 2010), *trans. denied*.

[6] The Owners take issue with the NRC's imposition of joint and several liability because it quoted from a medical malpractice case to explain the concept. Joint and several liability applies in various contexts, and we find nothing wrong with the NRC's reliance on a medical malpractice case for general legal principles.

structure upon which the roads were built.

….

The Court reverses the Final Order of the [NRC] as to [apportionment of responsibility] finding that Miami County, as owner of title to an easement for the streets which traverse the Hidden Hills dams, is an owner of the property upon which the structure is located and responsible for all aspects of the repair and reconstruction of the six roadway dams under consideration.

Appealed Order at 11-12. The County now appeals.

# Discussion and Decision

[7] In an appeal involving an administrative agency's decision, our standard of review is governed by the Administrative Orders and Procedures Act, and we are bound by the same standard of review as the trial court. *Walker v. State Bd. of Dentistry*, 5 N.E.3d 445, 448 (Ind. Ct. App. 2014), *trans. denied*. "We do not try the case de novo and do not substitute our judgment for that of the agency." *Id*.

We will reverse the administrative decision only if it is: (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) contrary to a constitutional right, power, privilege, or immunity; (3) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; (4) without observance of procedure required by law; or (5) unsupported by substantial evidence.

*Id*. (citing Ind. Code § 4-21.5-5-14).

[8] "[A] court may not overturn an administrative determination merely because it would have reached a different result." *Id*. "An interpretation of statutes and regulations by an administrative agency charged with the duty of enforcing those regulations and statutes is entitled to great weight unless this interpretation would be inconsistent with the law itself. The reviewing court should generally accept an agency's reasonable interpretation of regulations and statutes." *Id*. (citation omitted). "The burden of demonstrating the invalidity of the agency action is on the party who asserts the invalidity." *Id*.

[9] The County argues that it is not an "owner" of the dams as defined by the Act. "[O]ur goal in statutory interpretation is to determine, give effect to, and implement the intent of the legislature as expressed in the plain language of its statutes." *Fight Against Brownsburg Annex. v. Town of Brownsburg*, 32 N.E.3d 798, 805 (Ind. Ct. App. 2015). "The first rule of statutory construction is that '[w]ords and phrases shall be taken in their plain, or ordinary and usual, sense.'" *State v. Prater*, 922 N.E.2d 746, 749 (Ind. Ct. App. 2010) (quoting Ind. Code § 1-1-4-1(1)), *trans. denied*. "If a statute is unambiguous, that is, susceptible to but one meaning, we must give the statute its clear and plain meaning." *Brownsburg*, 32 N.E.3d at 805 (quoting *Curley v. Lake Cty. Bd. of Elections & Registration*, 896 N.E.2d 24, 34 (Ind. Ct. App. 2008), *trans. denied* (2009)).

> We review the statute as a whole and presume the legislature intended logical application of the language used in the statute, so as to avoid unjust or absurd results. We must consider not only what the statute says but what it does not say. In other

words, we are obliged to suppose that the General Assembly chose the language it did for a reason.

*Id.* (citations, quotation marks, and brackets omitted).

[10] The County advances a multifaceted argument that it is not an "owner" of the dams pursuant to the Act and therefore should not be responsible for repairing or reconstructing them. We agree, for the simple reason that the County does not have "an interest in or to the property *upon which* the structure is located." Ind. Code § 14-27-7.5-4 (emphasis added). Only the Owners have an interest in the property "upon which" the dams are located, and only they have a duty to repair or reconstruct the dams pursuant to the Act.[7] The County has only an easement interest in the roads *on top of* the dams, and it is obligated to maintain

---

[7] Under the NRC's and the trial court's reasoning, a nonprofit group that owns an easement for a hiking path on top of a dam would be considered an "owner" of the dam pursuant to the Act and therefore would be responsible for maintaining the entire dam. This strikes us as an unjust and absurd result.

only the roads pursuant to its 2005 resolution.[8]  Consequently, we reverse and remand for further proceedings consistent with this opinion.[9]

[11]  Reversed and remanded.

May, J., and Pyle, J., concur.

---

[8] The Owners observe, "It is a fundamental maxim that the title to land extends down to the center of earth, and up to the heavens, within the lines of gravitation."  Owners' Br. at 26-27 (quoting *Pyramid Coal Corp. v. Pratt*, 229 Ind. 648, 652, 99 N.E.2d 427, 429 (1951)).  But the Owners cite no authority for the proposition that the County's easement interest in the roads on top of the dams extends to the property upon which the dams are located, let alone to the center of the earth.  *Cf. Rehl v. Billetz*, 963 N.E.2d 1, 6 (Ind. Ct. Ap. 2012) ("It is well established that easements are limited to the purpose for which they are granted.").  The Owners also observe that the County has "enjoyed increased property tax receipts" resulting from the dam-created waterfronts, as well as "taxpayer funding for the roads [the County] maintains over the dams."  Owners' Br. at 39.  These considerations are irrelevant as to whether the County is an "owner" of the dams pursuant to the Act, and there is no indication that the County has received any taxpayer funding to maintain the dams.

[9] The DNR argues that assigning the County "responsibility for dam repairs more effectively achieves the purpose of the Dam Safety Act" and frets that "even one holdout among the Hidden Hills residents for a particular dam could jeopardize the goal of achieving effective dam repair[.]"  DNR's Br. at 13, 16.  The possibility of Owners shirking their statutory duty to repair the dams is not a sufficient justification for disregarding the plain language of the Act.