# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

May 13 2020, 8:26 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANTS

Kim E. Ferraro
Hoosier Environmental Council
Gary, Indiana

ATTORNEYS FOR APPELLEES

Todd J. Janzen
Brianna J. Schroeder
Janzen Agricultural Law LLC
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Steven and Kathy Chambers, Stephen and Elizabeth Driscoll, and Perry and Tonya Evans,

*Appellants-Intervenors,*

v.

Delaware-Muncie Metropolitan Board of Zoning Appeals,

*Respondent,*

and

Rhett and Alana Light,

*Appellees-Petitioners*

May 13, 2020

Court of Appeals Case No. 19A-PL-1485

Appeal from the Grant Circuit Court

The Honorable Mark E. Spitzer, Judge

Trial Court Cause No. 27C01-1811-PL-49

**Crone, Judge.**

## Case Summary

[1] Rhett and Alana Light obtained a permit from the Delaware County Building Commissioner to build several hog barns on their property. Steven and Kathy Chambers, Stephen and Elizabeth Driscoll, and Perry and Tonya Evans (Intervenors), who live near the Lights' property, asked the Delaware-Muncie Metropolitan Board of Zoning Appeals (the BZA) to review the Building Commissioner's decision to issue the permit. After a hearing, the BZA issued a decision voiding the permit. The Lights petitioned for judicial review of the BZA's decision, which the trial court reversed. On appeal, Intervenors argue that the trial court erred. We disagree and therefore affirm.

## Facts and Procedural History

[2] The relevant facts are undisputed. In March 2018, the Lights applied for a permit from the Building Commissioner to build four hog barns on their property, which is located in the "F Farming Zone" under the Delaware County Comprehensive Zoning Ordinance. The Building Commissioner determined that he had "no cause to not approve the project for zoning compliance under the ordinance"; that the building plans were "in compliance with current Indiana Building Code"; and that the Lights had received the required state and local government permits for a confined feeding operation, erosion control, a driveway, and drainage. Appellants' App. Vol. 3 at 100.

Accordingly, the Building Commissioner issued the Lights a building permit in May 2018.

Intervenors asked the BZA to review the Building Commissioner's decision to issue the permit. The BZA held a hearing and issued a decision voiding the permit. The Lights petitioned for judicial review of the BZA's decision and were granted a change of venue. After a hearing, the trial court issued an order containing the following relevant findings and conclusions, which provide additional background as well as context for our discussion below:

> [The Lights' proposed hog farm] would be configured as a "concentrated animal feeding operation" (hereinafter "CAFO") as such farms are classified under the Indiana Confined Feeding Control Law (Ind. Code § 13-18-10-1 *et seq.*) and the Confined Feeding Operation regulation (327 I.A.C. § 19).[1] The proposed operation would house and raise up to 10,560 wean-to-finish pigs, raised in two groups per year.
>
> Article XII of the Delaware County Comprehensive Zoning Ordinance ("the Zoning Ordinance") defines permitted uses within the "F Farming Zone" in relevant part as follows:
>
>> For the purpose of this Ordinance, farming shall mean the carrying out of an agricultural use or uses, as permitted in this Ordinance, on a tract of land having a minimum area of five (5) acres where fifty (50) percent or more of the land is under cultivation or used for dairying, pasturage, apiculture,

---

[1] Indiana Code Section 13-11-2-40 defines "confined feeding operation" in pertinent part as any confined feeding of at least six hundred swine.

horticulture, viticulture, animal and poultry husbandry, forestry or similar farming activities.

No building, structure or land shall be used or occupied and no building or structure shall hereafter be erected, structurally altered, enlarged or maintained except for the following uses:

> 1. Single family dwellings.
> 2. Field crops; dairies; tree crops; flower gardening; nurseries; orchards; farms for the hatching, raising and sale of chickens, hogs, cattle, turkeys or other animals; horse farm; sheep raising; breed, boarding or sale of dogs; aquariums. All such animal uses and buildings or premises shall be at least two hundred (200) feet from a dwelling (other than a farm dwelling), school, church, hospital or institution for human care.
> 3. Barns and similar farming buildings.

The Zoning Ordinance became effective December 11, 1973. [Both sides agree that the Farming Zone provision was added in 1993.] There have been no further amendments related to the raising of hogs or other animals, and nothing in the ordinance specifically addresses confined or concentrated animal feeding operations. Delaware County has at least five other existing confined feeding operations which were initiated since the passage of the Zoning Ordinance, beginning in 1974. Those are considered by the county zoning department as permitted uses. A prior CAFO was constructed and permitted as recently as 2017.

In 1997, the Delaware County Subdivision Ordinance was amended to require certain restrictive covenants for proposed subdivisions located in the F Farming Zone or abutting land classified in the F Farming Zone. Those covenants must contain the following acknowledgement:

> First, acknowledges and agrees that the (insert name of addition) is in or adjacent to an area zoned for agricultural uses, high [sic] uses include, but are not limited to, production of crops, animal husbandry, land application of animal waste, *the raising, breeding and sale of livestock and poultry, including confinement feeding operations*, use of farm machinery, and the sale of farm products.

*Emphasis added.*

In February of 2018, the [Delaware County] Commissioners had provided a "hold" on building permits for confined feeding operations, which "hold" was lifted on April 2, 2018.[2] Thereafter, after the Lights secured approval from the County Surveyor and County Engineer, the Delaware County Building Commissioner approved the Building Permit on May 17, 2018. The permit was approved three days after the introduction of Ordinance No. 2018-004, entitled "An Ordinance Establishing a Moratorium On Certain Uses Within Farming Zones in Delaware County, Indiana" ("the Moratorium Ordinance"). That Ordinance was passed on May 21, 2018, but did not apply to the Light permits which had previously been granted. Notably, the Moratorium Ordinance provided in relevant part:

---

[2] In a footnote, the trial court observed that the "hold" appeared to be a nullity because the proper procedures for amending or partially repealing the Zoning Ordinance were not followed. Appealed Order at 5 n.1.

> WHEREAS, Article XII of the Delaware County Comprehensive Zoning Ordinance currently provides that an animal feeding operation of any size is considered a permitted use in any F Farming Zone and a building permit may be issued provided the minimum requirements applicable to all farming uses are met; ….

> The Ordinance was passed unanimously by the Board of Commissioners.

Appealed Order at 4-6 (record citation and footnote omitted).

The BZA had voided the Lights' building permit based on its determination that "the F Farming Zone does not recognize industrial agricultural uses, such as the [Lights'] CAFO that will generate as much urine and feces as a small town." *Id*. at 6. But the trial court noted that the Zoning Ordinance specifically permits "animal and poultry husbandry," as well as the "raising and sale" of hogs and the erection of "[b]arns and similar farming buildings" in the F Farming Zone. *Id*. at 8 (emphases omitted). The court concluded that "[t]his language clearly indicates that hog raising operation[s], in barns, are a permitted use. The clear language of the ordinance itself is sufficient to answer the question presented, and the inquiry could stop there." *Id*.

Nevertheless, the court went on to observe that "there were other confined feeding operations permitted in Delaware County following the passage of the zoning ordinance" and that "the language of the Moratorium Ordinance" reflected the Commissioners' understanding that their Zoning Ordinance

"would allow such a use.… The 1997 Amendment to the Subdivision Ordinance, requiring covenants to acknowledge the possibility of 'confinement feeding operations' adjacent to subdivisions if they were located near the F Farming Zone, indicated a similar understanding." *Id*. at 8-9.

[6] Moreover, the trial court concluded that

> [t]he BZA's findings that the Lights' operation is somehow distinguishable from other agricultural uses because it is an "industrial agricultural" use that will "generate as much urine and feces as a small town" [are] not in any way supported by the language of the Ordinance. Setting aside the difficulty of a standard which would measure waste output against a "small town", the Ordinance does not establish such a standard, nor does it draw a distinction or provide a definition for "industrial agricultural" uses as opposed to other agricultural uses. It simply provides for agricultural uses, which it describes to include the raising of hogs in barns. Being bound to strictly construe zoning ordinances in favor of the property owner, the Court concludes that such a construction of the Zoning Ordinance here would permit the use described by the Lights in their permit application.
>
> ….
>
> Here, Delaware County could have excluded [CAFOs] from the F Farming District, or placed other restrictions on them distinct from more traditional farming operations. To the date of the Lights' permit application, it neglected to do so. Consistent with the existing Zoning Ordinance, several prior confined feeding operations were located and permitted in Delaware County. Delaware County may, by ordinance *amendment*, restrict confined feeding operations in some way in the future. It may not do so by changing its *interpretation* of the existing Zoning Ordinance. Such disparate treatment of similar situations is the essence of "arbitrary and capricious."

…

>For all the foregoing reasons, the BZA's decision is reversed and the Building Commissioner/Zoning Administrator's decision to issue the Building Permit to the Lights is reinstated.

*Id*. at 9-11 (footnote and citation omitted). Intervenors now appeal.

## Discussion and Decision

In an appeal involving an administrative agency's decision, our standard of review is governed by the Administrative Orders and Procedures Act, and we are bound by the same standard of review as the trial court. *Walker v. State Bd. of Dentistry*, 5 N.E.3d 445, 448 (Ind. Ct. App. 2014), *trans. denied*. "We do not try the case de novo and do not substitute our judgment for that of the agency." *Id*.

>We will reverse the administrative decision only if it is: (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) contrary to a constitutional right, power, privilege, or immunity; (3) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; (4) without observance of procedure required by law; or (5) unsupported by substantial evidence.

*Id*. (citing Ind. Code § 4-21.5-5-14). "The burden of demonstrating the invalidity of the agency action is on the party who asserts the invalidity." *Id*.

The crux of this appeal is the BZA's interpretation of the Zoning Ordinance. "Construction of a zoning ordinance is a question of law." *Essroc Cement Corp.*

*v. Clark Cty. Bd. of Zoning App.*, 122 N.E.3d 881, 891 (Ind. Ct. App. 2019) (citation omitted), *trans. denied*. "Regulations that impair the use of real property are strictly construed because they are in derogation of the common law." *Id.* (citation and quotation marks omitted). "We therefore will not extend zoning regulations by implication." *Id.*

[9] "When we must construe a zoning ordinance, we apply the same rules of construction that we use on statutes." *Id.* "[T]he express language of the ordinance controls our interpretation and our goal is to determine, give effect to, and implement the intent of the enacting body." *Id.* (quoting *Hoosier Outdoor Advert. Corp. v. RBL Mgmt., Inc.*, 844 N.E.2d 157, 163 (Ind. Ct. App. 2006), *trans. denied*). The plain language of the ordinance is the best evidence of the drafters' intent. *Schwab v. Morrissey*, 83 N.E.3d 88, 92 (Ind. Ct. App. 2017). "When an ordinance is subject to different interpretations, the interpretation chosen by the administrative agency charged with the duty of enforcing the ordinance is entitled to great weight, unless that interpretation is inconsistent with the ordinance itself." *Essroc Cement*, 122 N.E.3d at 891 (quoting *Hoosier Outdoor*, 844 N.E.2d at 163). An agency's incorrect interpretation of an ordinance is entitled to no weight. *See Pierce v. State Dep't of Corr.*, 885 N.E.2d 77, 89 (Ind. Ct. App. 2008) (regarding statutes). If an agency misconstrues an ordinance, there is no reasonable basis for the agency's ultimate action, and the reviewing court is required to reverse the agency's action as being arbitrary and capricious. *Id.*

[10] "Courts may not interpret a statute or an ordinance that is plain and unambiguous on its face." *Metro. Dev. Comm'n of Marion Cty. v. Villages, Inc.*, 464 N.E.2d 367, 369 (Ind. Ct. App. 1984), *cert. denied* (1985). Where the relevant language "is clear and plain, there is no room for construction and a court has no power to resort to construction for the purpose of limiting or extending its operation." *Madison Area Educ. Special Servs. Unit v. Ind. Educ. Empl. Relations Bd.*, 483 N.E.2d 1083, 1086 (Ind. Ct. App. 1985).

[11] Here, the trial court concluded that the Zoning Ordinance clearly permits the Lights to use their property to raise hogs in the barns that were approved by the Building Commissioner. We agree.[3] Intervenors observe that "CAFOs are not the same as traditional farms in terms of their industrial nature, scale and impact" and "are subject to federal and state regulation that traditional farms are not[.]" Appellants' Br. at 13. But the Zoning Ordinance sets no limits on the scale of permitted uses in the F Farming Zone and has no bearing on federal and state regulations.[4] Intervenors insist that the Zoning Ordinance is

---

[3] Intervenors seize on the trial court's use of the phrase "hog raising operation" and complain that "nowhere does the term 'operation' appear in the Farm Zone's text, and that term adds unique meaning not intended by the drafters." Appellants' Br. at 15 (footnote omitted). Intervenors' concerns are overstated: "hog raising operation" is simply another way of saying "raising hogs."

[4] Intervenors note that the Zoning Ordinance's 200-foot minimum setback requirement is inconsistent with the Indiana Administrative Code's 400-foot setback requirement for CAFOs. *See* 327 IAC 19-12-3. Obviously, the latter would take precedence over the former with respect to CAFOs.

ambiguous because it does not mention CAFOs, but we must decline their invitation to find an ambiguity where none exists.[5]

[12] At any point before the Lights applied for a building permit, the County Commissioners could have amended the Zoning Ordinance to limit the scale of permitted uses in the F Farming Zone, or they could have enacted a provision specifically regulating CAFOs, but they did neither of those things.[6] As written, the plain language of the Zoning Ordinance in effect at the time the building permit was issued unambiguously permits the Lights to raise any number of hogs (subject to state and federal limitations) in the barns they want to build on their property, and the BZA acted arbitrarily and capriciously in voiding their building permit. We therefore affirm the trial court's reversal of the BZA's decision.

[13] Affirmed.

May, J., and Pyle, J., concur.

---

[5] Because no ambiguity exists, we are unpersuaded by Intervenors' reliance on *T.W. Thom Construction, Inc., v. City of Jeffersonville,* 721 N.E.2d 319 (Ind. Ct. App. 1999), and *Day v. Ryan*, 560 N.E.2d 77 (Ind. Ct. App. 1990).

[6] According to Intervenors, the Zoning Ordinance has since been amended to specifically regulate CAFOs. To the extent Intervenors argue that the County Commissioners either did not contemplate or intentionally excluded CAFOs when they drafted the Farming Zone provision of the Zoning Ordinance in 1993, the 1997 amendment of the Subdivision Ordinance strongly suggests otherwise.