FILED

Jun 30 2020, 7:30 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEY FOR APPELLANT

Ralph C. Melbourne
Church Langdon Lopp & Banet, LLC
New Albany, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General

Benjamin M. L. Jones
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Randy L. Hotmer, <br> *Appellant-Petitioner,* <br><br> v. <br><br> Indiana Family and Social Services Administration, <br> *Appellee-Respondent* | June 30, 2020 <br><br> Court of Appeals Case No. 19A-PL-2694 <br><br> Appeal from the Clark Circuit Court <br><br> The Honorable William A. Dawkins, Magistrate <br><br> Trial Court Cause No. 10C02-1807-PL-82 |

**Crone, Judge.**

## Case Summary

[1] Randy L. Hotmer purchased two irrevocable annuities; pursuant to the annuities' contract documents, the monthly payments were made to his wife. Hotmer, who was in a nursing home, applied for Medicaid benefits with the

Indiana Family and Social Services Administration (FSSA). FSSA ruled that because Hotmer was the owner of the annuities, the income from the annuities must be attributed to him, and because that income resulted in Hotmer exceeding the income limit for Medicaid eligibility, FSSA denied his application. Hotmer petitioned for judicial review of FSSA's ruling, and the trial court affirmed. Hotmer now appeals, arguing that FSSA erred in attributing the annuity income to him and in denying his application. We agree and therefore reverse and remand for further proceedings.

## Facts and Procedural History

The relevant facts are undisputed. Hotmer was born in 1948. In April 2017, he entered a nursing home for long-term care. Over the next few months, he filled out applications for and ultimately purchased two eight-year annuities, one from Elco Mutual and one from NGL. On the applications, Hotmer directed that the monthly checks be made out to his wife as payee, and he also named her as the primary beneficiary who would be entitled to receive any remaining payments after his death. The annuity contract documents list Hotmer as the annuitant, or the owner, of the annuities, and state that the applications are part of the contracts. The Elco Mutual contract states, "Annuity payments will be made to the Owner, or as otherwise directed by the Owner, beginning on the Annuity Date." Appellant's App. Vol. 3 at 40. The contract further states, "This contract is irrevocable. It may not be transferred, assigned, surrendered or commuted during Your lifetime.… Neither the Annuitant nor the Beneficiary may be changed." *Id.* at 41. The NGL contract states, "[NGL] will

make annuity payments to the Annuitant commencing on the Annuity Date." *Id.* at 45. The contract further states, "This Contract is irrevocable. It may not be altered, transferred, assigned, surrendered or commuted during Your lifetime.… Neither the Annuitant nor any Beneficiary may be changed." *Id.* at 47.

[3] In October 2017, Hotmer applied for Medicaid benefits with FSSA, which administers the Medicaid program in Indiana. The local FSSA office determined that the annuity payments belonged to Hotmer as the owner of the annuity, and it denied his application on the basis that those payments boosted his monthly income above the applicable eligibility limit.[1] Hotmer petitioned for administrative review of that decision. An administrative law judge (ALJ) overturned the denial based on 42 U.S.C. § 1396r-5(b)(2)(A)(i) (Section 1396r-5), which states,

> in the case of income not from a trust, unless the instrument providing the income otherwise specifically provides[,] if payment of income is made solely in the name of the institutionalized spouse [Hotmer] or the community spouse [his wife], the income shall be considered available only to that respective spouse[.]

---

[1] Absent the annuity payments, Hotmer's monthly income is approximately $200 below the limit. Each of the annuity payments exceeds $200.

The ALJ concluded that because the annuity payments were made solely in the name of Hotmer's wife, they were considered available only to his wife, and therefore Hotmer's income did not exceed the limit.

[4] FSSA petitioned for review of the ALJ's decision. FSSA's ultimate authority remanded to the ALJ with instructions to examine the evidence and Section 1396r-5 in their entirety, further address the issue of income, and provide findings and conclusions to support her decision. On remand, the ALJ found that Hotmer's annuities,

> of which he is the owner/annuitant, is [sic] being paid directly to [his wife] for her benefit only. [Hotmer] does not have access to the monthly income. [His wife] is the recipient of the monthly payments which are deposited into her account for her use only. Therefore the annuity income is not countable under [Hotmer's] countable monthly income.

Appellant's App. Vol. 2 at 49.

[5] FSSA again petitioned for review, and FSSA's ultimate authority issued a decision that reads in relevant part,

> After review of the evidence, it is clear that [Hotmer] is the owner of the annuities and as owner the income source must be attributed to him regardless of who he has assigned as a payee. [Hotmer's] income must be used for his care since he applied for Medicaid. 42 CFR 435.608 states, "(a) As a condition of eligibility, the agency must require applicants and beneficiaries to take all necessary steps to obtain any annuities, pensions, retirement, and disability benefits to which they are entitled, unless they can show good cause for not doing so." The State's

original decision to deny Medical Assistance to the Aged to [Hotmer] for the application dated October 20, 2017 is sustained.

*Id*. at 21. Hotmer petitioned for judicial review of the decision pursuant to the Indiana Administrative Orders and Procedures Act (the Act). After a hearing, the trial court affirmed FSSA's decision. Hotmer now appeals.

## Discussion and Decision

In an appeal involving an administrative agency's decision, our standard of review is governed by the Act, and we are bound by the same standard of review as the trial court. *Walker v. State Bd. of Dentistry*, 5 N.E.3d 445, 448 (Ind. Ct. App. 2014), *trans. denied*. "We do not try the case de novo and do not substitute our judgment for that of the agency." *Id*.

> We will reverse the administrative decision only if it is: (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) contrary to a constitutional right, power, privilege, or immunity; (3) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; (4) without observance of procedure required by law; or (5) unsupported by substantial evidence.

*Id*. (citing Ind. Code § 4-21.5-5-14). "A decision is arbitrary and capricious when it is made without consideration of the facts and lacks any basis that may lead a reasonable person to make the decision made by the administrative agency." *Ind. Real Estate Comm'n v. Martin*, 836 N.E.2d 311, 313 (Ind. Ct. App. 2005), *trans. denied* (2006).

[7] "[A] court may not overturn an administrative determination merely because it would have reached a different result." *Walker*, 5 N.E.3d at 448. "An interpretation of statutes and regulations by an administrative agency charged with the duty of enforcing those regulations and statutes is entitled to great weight unless this interpretation would be inconsistent with the law itself." *Id*. "Although an appellate court grants deference to an administrative agency's findings of fact, no such deference is accorded to its conclusions of law." *Id*. "The burden of demonstrating the invalidity of the agency action is on the party who asserts the invalidity." *Id*. at 449.

[8] For background purposes, we note that Congress established Medicaid in 1965 "to provide medical assistance to needy persons whose income and resources are insufficient to meet the expenses of health care." *Brown v. Ind. Family & Soc. Servs. Admin.*, 45 N.E.3d 1233, 1236 (Ind. Ct. App. 2015). "The program operates through a combined scheme of state and federal statutory and regulatory authority. States participating in the Medicaid program must establish reasonable standards for determining eligibility, including the reasonable evaluation of an applicant's income and resources." *Id*. (citation omitted). "To qualify for Medicaid, an applicant must meet both an income-eligibility test and a resources-eligibility test. If either the applicant's income or the value of the applicant's resources is too high, the applicant does not qualify for Medicaid." *Id*. (citation omitted).

[9] In this case, we are concerned only with Hotmer's income eligibility. Hotmer notes that, pursuant to 42 U.S.C. § 1396p(c)(2)(B)(i), an individual who has

applied for Medicaid benefits "shall not be ineligible for medical assistance … to the extent that … assets" – such as annuity payments[2] – "were transferred to the individual's spouse … for the sole benefit of the individual's spouse." Here, it is undisputed that Hotmer transferred the annuity payments to his wife for her sole benefit. And because those payments are made solely in her name, the income shall be considered available only to her pursuant to Section 1396r-5.[3] According to FSSA, Hotmer is entitled to those payments as the owner of the annuities and failed to "take all necessary steps to obtain" them pursuant to 42 C.F.R. § 435.608, and therefore that income must be attributed to him.[4]

[10] We disagree. The annuity contracts, which include the annuity applications on which Hotmer named his wife as payee, are irrevocable, i.e., "[u]nalterable; committed beyond recall." BLACK'S LAW DICTIONARY (11th ed. 2019). Consequently, Hotmer could not change the payee and make the payments

---

[2] *See* 42 U.S.C. § 1396p(h)(1) (defining "assets" in pertinent part as "all income and resources of the individual and of the individual's spouse"), -(2) (providing that "income" has meaning given in 42 U.S.C. § 1382a, which defines "income" as "both earned income and unearned income[,]" the latter of which includes "any payments received as an annuity").

[3] FSSA's ultimate authority did not contradict the ALJ's finding that Hotmer's wife deposits the payments into an account for her use only.

[4] FSSA cites Section 2805.15.00 of the Indiana Health Coverage Program Policy Manual, which reads in pertinent part, "The individual who has title to the proceeds of a payment or property is the individual who 'owns' the income. If the income is received by an individual's legal representative or guardian, the individual still owns the income." There is no indication that Hotmer's wife is his legal representative or guardian, and to the extent that this policy conflicts with Section 1396r-5, it is invalid. *See Knox Cty. Ass'n for Retarded Citizens, Inc.*, 100 N.E.3d 291, 300 (Ind. Ct. App. 2018) (invalidating state regulation that conflicted with federal law), *aff'd on reh'g*, 107 N.E.3d 1111.

available to him without breaching the contracts.[5] We therefore conclude that FSSA's denial of Hotmer's application for Medicaid benefits was arbitrary and capricious, and we reverse and remand for further proceedings consistent with this decision.[6]

[11] Reversed and remanded.

Bailey, J., concurs.

Altice, J., concurs in result without opinion.

---

[5] On appeal, at least, FSSA has not specifically argued that Hotmer was obligated to make the annuity payments available to himself before he applied for Medicaid benefits. Accordingly, we do not address Hotmer's contention that such an argument is meritless.

[6] Consequently, we need not address Hotmer's argument that FSSA deprived him of due process by citing 42 C.F.R. § 435.608 as a basis for denying his application for the first time in its final decision. We do note, however, that the regulation requires that an applicant be given an opportunity to make a good-cause showing, and it is questionable whether Hotmer was given that opportunity below.