INDIANA REAL ESTATE COMMIS-
SION, Appellant–Respondent,

v.

Rick Edward MARTIN, Appellee–
Petitioner.

No. 49A05–0406–CV–349.

Court of Appeals of Indiana.

Oct. 28, 2005.

Steve Carter, Attorney General of Indiana, Frances H. Barrow, Deputy Attorney General, Indianapolis, for Appellant.

John E. Kolas, Slaughter Kolas & Centers, Indianapolis, for Appellee.

## OPINION

MAY, Judge.

The Indiana Real Estate Commission ("Commission") appeals the trial court's reversal of the Commission's final order suspending Rick Martin's real estate license as a result of his failure to obtain approved continuing education. The Commission raises one issue: whether the court erred when it determined the Commission's decision was arbitrary and a violation of Ind.Code § 25–1–11–16, which encourages consistency in sanctions.

We reverse and remand.

### FACTS AND PROCEDURAL HISTORY

In 1985, Rick Martin was licensed as a real estate broker in Kentucky. In 1996, through reciprocity, Martin became a licensed real estate salesperson in Indiana. When Martin sought to renew his real estate sales license for 2000–01, a routine audit revealed he had not obtained sixteen hours of approved continuing education required for the period January 1, 1998 through December 31, 1999. Between October 2000 and September 2001, Martin obtained forty hours of approved continuing education in an effort to remedy this deficiency and satisfy his continuing education requirements for the 2000–01 period. He obtained an Indiana real estate broker license in July 2001.[1]

On September 20, 2001, the Attorney General filed a complaint alleging Martin failed to obtain sufficient continuing education for 1998–99 and asking the Indiana Real Estate Commission to impose appropriate sanctions on Martin. A three-member panel of administrative law judges held

---

1. A broker is "a person who, for consideration, sells, buys, trades, exchanges, options, leases, rents, manages, lists, or appraises real estate or negotiates or offers to perform any of those acts." Ind.Code § 25–34.1–1–2. A salesperson is "an individual, other than a broker, who, for consideration and in association with and under the auspices of a broker, sells, buys, trades, exchanges, options, leases, rents, manages, or lists real estate or negotiates or offers to perform any of those acts." *Id.* Unless the requirement is waived, an individual must have one year of continuous active experience as a licensed salesperson in Indiana in order to become a broker. Ind. Code § 25–34.1–3–4.1(a)(2).

a hearing on December 5, 2001 and issued its Findings of Fact, Conclusions of Law and Order on December 18, 2001. Martin appealed to the Commission on December 27, 2001.

On April 16, 2002, after a hearing, the Commission affirmed the panel's order. The Commission's order suspended Martin's broker license "indefinitely with no right to petition the Commission for reinstatement for a period of two years." (App. at 74.) The order also required Martin to pay a $500 fine and costs of the proceedings.

On April 24, 2002, Martin sought judicial review of the Commission's decision. The court determined the "inconsistency in the application of sanctions by the Indiana Real Estate Commission and the arbitrary nature of the decision reached justifies relief on Judicial Review." (*Id.* at 13.) On December 22, 2003, having determined the actions of the Commission were arbitrary, the court set aside the Commission's order and ordered Martin's broker's license be reinstated.

The Commission filed a motion to correct error, which was granted. The corrected order, dated April 27, 2004, remanded the matter to the Commission but did not disturb the court's determination the Commission acted in an arbitrary manner. The Commission now appeals the trial court's order, arguing the court improperly granted Martin's petition for judicial review.

### DISCUSSION AND DECISION

Judicial review of an administrative decision is limited. Review of an agency's decision is confined largely to the agency record. The court cannot reweigh the evidence and must review the record in the light most favorable to the administrative proceedings. The court may neither try the case *de novo* nor substitute its judgment for that of the agency. The reviewing court is to give deference to the expertise of the administrative body. The decision should be reversed only when it is (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) contrary to a constitutional right, power, privilege, or immunity; (3) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; (4) without observance of procedure required by law; or (5) unsupported by substantial evidence.

*State of Indiana, Indiana Real Estate Comm'n v. C.M.B. III Enterprises, Inc.,* 734 N.E.2d 653, 658 (Ind.Ct.App.2000) (citations omitted), *trans. denied.* A decision is arbitrary and capricious when it is made without consideration of the facts and lacks any basis that may lead a reasonable person to make the decision made by the administrative agency. *Indiana Dept. of Envtl. Mgmt. v. Schnippel Constr., Inc.,* 778 N.E.2d 407, 412 (Ind.Ct.App.2002), *trans. denied.*

The Indiana Real Estate Commission is charged with regulating real estate practitioners in Indiana. Ind.Code § 25–34.1–2–5. In discharging this duty, the Commission has established continuing education requirements for all licensees, consisting of a minimum of sixteen hours of approved courses taken in specific subject areas from approved course sponsors during the relevant two-year licensure period. Ind. Admin. Code, tit. 876, r. 4–2–1, *et seq.* Additional courses taken in one licensure period do not carry over to the next licensure period. 876 IAC 4–2–1–1(g).

When applying for a license renewal, the applicant must certify he has "complied with the continuing education requirements" set forth by the Commission. 876 IAC 4–2–6(a). The Commission may re-

quest verification of this certification. 876 IAC 4–2–6(b), (c). Failure to verify continuing education hours claimed in the renewal application "shall subject a licensee to the sanctions provided for under IC 25–1–11." 876 IAC 4–2–6(d).

Indiana Code § 25–1–11–5(a)(3) provides:

(a) A practitioner shall comply with the standards established by the board regulating a profession. A practitioner is subject to the exercise of the disciplinary sanctions under section 12 of this chapter if, after a hearing, the board finds that:

\* \* \* \* \* \*

(3) a practitioner has knowingly violated a state statute or rule or federal statute or regulation regulating the profession for which the practitioner is licensed.

Section 12 describes the sanctions available to the Commission:

(a) The board may impose any of the following sanctions, singly or in combination, if the board finds that a practitioner is subject to disciplinary sanctions under sections 5 through 9 of this chapter:

(1) Permanently revoke a practitioner's license.

(2) Suspend a practitioner's license.

(3) Censure a practitioner.

(4) Issue a letter of reprimand.

(5) Place a practitioner on probation status and require the practitioner to:

(A) report regularly to the board upon the matters that are the basis of probation;

(B) limit practice to those areas prescribed by the board;

(C) continue or renew professional education approved by the board until a satisfactory degree of skill

has been attained in those areas that are the basis of the probation; or

(D) perform or refrain from performing any acts, including community restitution or service without compensation, that the board considers appropriate to the public interest or to the rehabilitation or treatment of the practitioner.

(6) Assess a civil penalty against the practitioner for not more than one thousand dollars ($1,000) for each violation listed in sections 5 through 9 of this chapter except for a finding of incompetency due to a physical or mental disability.

Ind.Code § 25–1–11–12. The Commission "shall seek to achieve consistency in the application of sanctions authorized in this chapter." Ind.Code § 25–1–11–16. "Significant departures from prior decisions involving similar conduct must be explained in the board's findings or orders." *Id.*

The Commission made the following relevant Findings of Fact:

6. Upon renewal of his license for the January 1, 2000 to December 31, 2001 period, [Martin] reported that he had completed at least 16 hours of continuing education during the January 1, 1998, through December 31, 1999 period.

7. The Commission requested verification of the continuing education hours that [Martin] reported. [Martin] failed to verify all of the continuing education hours that he claimed.

8. [Martin] did not obtain any approved continuing education during the January 1, 1998 through December 31, 1999 reporting period.

9. [Martin] admitted his misunderstanding and lack of knowledge of the continuing education requirement, which

requires that sixteen (16) hours of continuing education be taken prior to renewal of a license for a salesperson.

10. [Martin] submitted proof of continuing education hours taken *after* and *before* the renewal period, but no approved hours taken *during* the renewal period.

(App. at 44) (emphases original).

The record supports these findings. Martin obtained a real estate sales license through reciprocity in 1996. As part of the reciprocity process, Martin was required to state he "has studied, is familiar with, and will abide by the statutes and rules of this state." Ind.Code § 25–34.1–3–5. His license expired at the end of 1997 and was renewed for two years. When that term expired, Martin sought to renew his license and certified he had completed the required continuing education. The Commission requested verification and Martin provided attendance certificates for six courses.

On review, the Commission rejected three courses taken before the relevant reporting period; two courses sponsored by unapproved providers; and one course dealing with Kentucky, not Indiana, law. Thus, Martin was unable to verify any of the continuing education hours he claimed on his license renewal application for 1998–99.

In the fall of 2000, Martin completed sixteen hours of continuing education, provided attendance certificates to the Commission and requested these hours be accepted to fulfill the previous period's requirements. Martin attended an additional sixteen hours of continuing education in January 2001 for the 2000–01 reporting period. He obtained his associate broker's license in July 2001 and attended eight hours of continuing education for his broker's license in September 2001.

In its Conclusions of Law, the Commission stated Martin's failure to verify his continuing education hours subjected him to disciplinary sanctions and described the sanctions the Commission could impose pursuant to statute. The Order specifically noted Martin's "subsequent acquisition of continuing education hours and his lack of knowledge of Indiana law are not mitigating factors to be considered." (App. at 79.) The Commission then suspended Martin's license for a minimum of two years and imposed a fine and costs.

In reviewing the Commission's decision, the trial court found Martin's suspension inconsistent with similar cases decided by the Commission. It specifically discussed *State v. Labbe*, Cause No. IREC 01–21, and *State v. Jordan*, Cause No. IREC 02–32. On the basis of the final orders in those causes, the court found Martin's situation identical to Jordan's and, from that determination, deemed the sanction imposed on Martin impermissibly inconsistent with the sanction in *Jordan*. The court stated:

> [T]he Martin Order specifically said that his subsequent acquisition [sic] and lack of knowledge were not mitigating factors and that is directly contrary to the decision rendered in *Jordan* where those factors are noted as being important. Under Ind.Code 25–1–11–16, the Board is bound to seek consistency in the application of its sanctions and it has failed to do that.

(App. at 12.)

Our review of these causes and the record in this matter leads us to conclude the lower court erred. The Commission complied with its statutory mandate to seek consistency in its sanctioning decisions and to explain significant departures from prior decisions involving similar conduct.

At the Commission's review hearing, the following exchange regarding a prior decision of the Commission occurred:

HEARING OFFICER DOYLE: [...] Toni Flowers was just here this morning and she was suspended for two years.
[MARTIN'S COUNSEL]: That decision was rendered two years ago, obviously. I don't have the facts or findings of that case before me, but I think what you would see in Martin's case are circumstances—every case is different as you know.

The facts in Martin's case which should have been considered as mitigating and his reaction to the problem I think is admirable. It's the only thing he could have done.

I think the *Labbe* case though is a fair indication of what a typical sanction now is. That's why I cited that.

[STATE'S COUNSEL]: If I may, Mr. Chairman. You brought up the *Flowers* case. I believe in that case, Ms. Flowers also prior to the complaint being filed had completed her CE requirements and submitted that to the board prior to the case being filed. That was submitted as evidence in her case and she was still given the two year suspension for her failure to get the hours.

(Commission Tr. at 27–28.) We cannot speak to counsel's characterization of the facts in *Flowers* as that decision was not included in the record. However, we note Hearing Officer Doyle's observation that other licensees have received two-year suspensions from the Commission in the past. That the hearing officer mentioned the *Flowers* case suggests one member of the Commission saw some similarity between it and Martin's case.

In *Labbe,* Sally Labbe reported she had completed the sixteen hours of continuing education required to renew her real estate sales license. Because she was able to verify only eight of the hours she had claimed for the 1998–99 period, the Commission found Labbe was subject to a disciplinary sanction. Labbe was fined $1,000 and placed on probation until she had made up the deficient hours and provided proof to the Commission she had paid her fine and completed her continuing education. The complaint was filed in May 2001 and the final order was issued in October 2001.

Martin reported he had completed the sixteen hours of continuing education required to renew his real estate sales license. Because he was unable to verify any of the hours he claimed for the 1998–99 period, the Commission found Martin was subject to a disciplinary sanction. Martin was fined $500 and suspended for two years. The complaint was filed in September 2001 and the final order was issued in April 2002. Finding of Fact No. 9 states Martin "admitted his misunderstanding and lack of knowledge of the continuing education requirement." (App. at 77.) Finding of Fact No. 10 states Martin "submitted proof of continuing education hours taken *after* and *before* the renewal period, but no approved hours taken *during* the renewal period." (*Id.* at 77) (emphases original). The Order itself provides Martin's "subsequent acquisition of continuing education hours and his lack of knowledge of Indiana law are not mitigating factors to be considered." (*Id.* at 79.)

■ The facts differentiate *Labbe* from Martin's case and provide grounds for the different sanctions. Labbe completed some but not all of her continuing education and received probation. Martin failed to complete *any* of his continuing education and received the harsher sanction of suspension. Because the causes are factually distinguishable, the Commis-

sion was not required to explain the difference in sanctions.

In *Jordan*, Larry Jordan reported he had completed the sixteen hours of continuing education required to renew his real estate broker license. However, an audit revealed the hours Jordan had taken for the 1999–2000 period were not from an approved sponsor. Because he had failed to obtain the required hours, the Commission found Jordan subject to a disciplinary sanction. Jordan was fined $500 and placed on probation until he had completed two hours of Real Estate Licensing Law and submitted proof to the Commission. He was given 90 days to complete this continuing education. The complaint was filed in November 2002 and the final order was issued in July 2003. In *Jordan*, the Commission made the following relevant finding of fact:

> 8. The Panel found that the sanctions in this case could have been more severe *but it is believed* that [Jordan] thought he had gotten the approved hours. Even though [Jordan] may have been mistaken in his belief, the Panel found that it is [Jordan]'s responsibility to ensure that all CE hours reported are obtained from a Commission approved sponsor.

(*Id.* at 150) (emphasis supplied).

 Martin's case is more like *Jordan* in that neither Martin nor Jordan could verify any approved continuing education to the Commission. Each offered the Commission an explanation why he had failed to comply with the continuing education requirements. Martin's case differs from *Jordan*, however, as Jordan had taken continuing education courses, although not from an approved sponsor. The findings in the case before us do not indicate whether the Commission believed Martin's explanation; the findings in *Jordan* indicate the Commission did believe the explanation Jordan offered and acted accordingly by imposing a lesser sanction. The lower court, however, apparently believed Martin's explanation: "there is nothing in the record that would reveal that [Martin's] continuing education transgression . . . was anything but a simple mistake." (*Id.* at 8–9.) This finding reflects an impermissible re-weighing of the evidence, specifically witness testimony, in the administrative record.

Because *Jordan* and the case before us are factually similar, Ind.Code § 25–1–11–16 requires the Commission to explain "significant departures" regarding sanctions. This explanation must necessarily be included in the latter decision, here *Jordan*, and this the Commission did: "The Panel found that the sanction in this case could have been more severe but it is believed that [Jordan] thought he had gotten the approved hours." (App. at 150.) In other words, *Jordan* is a departure from the case before us, *Labbe* and other prior cases.

The Commission did not act arbitrarily when it suspended Martin's license for two years but rather meted out consistent sanctions in accordance with Ind.Code § 25–1–11–16.

Reversed.

SHARPNACK, J., and VAIDIK, J., concur.