

I N T H E

# Court of Appeals of Indiana

Fike Investments, LLC,
Jim Fike, and Kim Fike,

*Appellants-Respondents,*



FILED

Jan 23 2025, 9:50 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

v.

Gregory L. Wilson, Sr., Executive Director
of the Indiana Civil Rights Commission,

*Appellee-Complainant.*

January 23, 2025

Court of Appeals Case No.
24A-EX-3091

Appeal from the
Indiana Civil Rights Commission

The Honorable
Beth A. Butsch, Administrative Law Judge

Adrianne L. Slash, Chairperson
Steven A. Ramos, Commissioner
Holli Harrington, Commissioner
Terry Tolliver, Commissioner

ICRC Nos.
HOra15070510
HOrt15090649

---

**Opinion by Senior Judge Najam**
Judges Pyle and Kenworthy concur.

**Najam, Senior Judge.**

## Statement of the Case

Fike Investments, LLC, Jim Fike, and Kim Fike (collectively, the Fikes) appeal the order of the Ultimate Authority of the Indiana Civil Rights Commission (Commission) finding they violated both the Indiana Fair Housing Act (IFHA) and the Indiana Civil Rights Law (ICRL), awarding damages for moving expenses and emotional distress, and imposing a civil penalty. Concluding the evidence supports the determination of liability, the award of damages, and the imposition of the penalty, we affirm and remand with instructions.

## Issues

The Fikes present three issues, which we restate as:

I. Whether the Ultimate Authority's exemption determination is supported by substantial evidence.

II. Whether the award of emotional distress damages is supported by substantial evidence.

III. Whether the imposition of a civil penalty was arbitrary and capricious.

## Statement of the Facts

Fike Investments is a limited liability company in which Jim Fike and his wife, Kim, are the only members. Fike Investments owns a single-family residence on Hamilton Street in Granger that was listed for rent on Zillow.com. John Chubb found the rental listing on the website, submitted an application to rent the property, and eventually entered into a residential lease.

Thereafter, Chubb, who is disabled, requested Jim and Kim to modify his lease to allow him to have a live-in caregiver and to waive the pet deposit and monthly pet fee for his support animal as reasonable accommodations for his disability. When Jim and Kim denied Chubb's requests, he filed a complaint with the Commission claiming he experienced discrimination by the Fikes.[1] Following the filing of that complaint, Jim and Kim initiated an eviction action against Chubb. Chubb then filed a second complaint asserting retaliatory eviction for the prior complaint, and the two complaints were subsequently

---

[1] Under the IFHA, it is unlawful to discriminate based on disability. I.C. § 22-9.5-5-5.

consolidated. The Commission investigated and determined that reasonable cause existed to support both complaints.

[5] During the administrative proceedings, both parties moved for summary judgment. The Administrative Law Judge (ALJ) issued two orders on summary judgment collectively concluding that the Fikes discriminated and retaliated against Chubb in violation of both the IFHA and the ICRL and that the Fikes were not exempt from application of the IFHA. The ALJ also awarded Chubb damages for moving expenses and determined he was entitled to an award for emotional distress, the extent of which remained to be determined.

[6] The ALJ held an evidentiary hearing to determine the amount of emotional distress damages and whether any statutory penalties should be imposed. The ALJ issued a Recommended Order awarding Chubb $25,000 for emotional distress but not imposing any civil penalty against the Fikes. On Chubb's behalf, the Commission objected to the ALJ's order arguing, in pertinent part, that the award for emotional distress damages should be increased and that a civil penalty should be imposed against the Fikes.

[7] The Ultimate Authority heard oral argument on the Commission's objections and issued its final order affirming the ALJ's order with modifications, the most substantial and pertinent being that it imposed a $10,000 civil penalty against the Fikes. The Fikes now appeal.

## Discussion and Decision

[8] Judicial review of an administrative agency's action is governed by the Indiana Administrative Orders and Procedures Act (AOPA). *255 Morris, LLC v. Ind. Alcohol & Tobacco Comm'n*, 93 N.E.3d 1149, 1152-53 (Ind. Ct. App. 2018). Under the version of the AOPA in effect during these proceedings, we may set aside an agency action only if we determine the party seeking relief has been prejudiced by such action that is "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) contrary to constitutional right, power, privilege, or immunity; (3) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; (4) without observance of procedure required by law; or (5) unsupported by substantial evidence." Ind. Code § 4-21.5-5-14(d) (1987).[2]

[9] Our review of an agency's action is purposely limited in recognition of the agency's expertise in its field and the public's reliance on its authority to govern in that area. *Brookston Res., Inc. v. Dep't of Nat. Res.*, 243 N.E.3d 1127, 1139 (Ind. Ct. App. 2024) (quoting *Moriarity v. Ind. Dep't of Nat. Res.*, 113 N.E.3d 614, 619 (Ind. 2019)). Accordingly, when we review an agency's decision, we do not reweigh the evidence, judge witness credibility, or substitute our judgment for that of the agency. *Ind. Dep't of Nat. Res. v. Prosser*, 132 N.E.3d 397, 401

[2] Effective July 1, 2024, Section 4-21.5-5-14(d)(5) was amended to require the party seeking judicial relief to demonstrate that the agency action is "unsupported by a preponderance of the evidence" rather than "unsupported by substantial evidence."

(Ind. Ct. App. 2019), *trans. denied*. And we are bound by the agency's findings of fact if they are supported by substantial evidence. *Id.* The party seeking judicial review bears the burden of demonstrating the invalidity of the agency's action. *Id.*; I.C. § 4-21.5-5-14(a).

## I. Exemption Determination

The Fikes contend the Ultimate Authority's exemption determination is not supported by substantial evidence. The Ultimate Authority affirmed the ALJ's determination that the Fikes do not qualify for the exemption from application of the IFHA. The Fikes, however, assert they fulfill the requirements of the exemption set out in Indiana Code section 22-9.5-3-1(a) (1990).

Indiana Code section 22-9.5-3-1(a) supplies, in certain circumstances, an exemption under the IFHA. The statute provides, in pertinent part, that the IFHA does not apply to:

> (1) The sale or rental of a single-family house sold or rented by an owner if:
>> (A) the owner does not:
>>> (i) own more than three (3) single-family houses at any one (1) time; or
>>> (ii) own any interest in, nor is there owned or reserved on the owner's behalf, under any express or voluntary agreement, title to, or any right to any part of the proceeds from the sale or rental of more than three (3) single-family houses at any one (1) time; and
>> (B) the house was sold or rented without:
>>> (i) the use of the sales or rental facilities or services of a real estate broker, an agent, or a salesman . . . .

*Id.* The Fikes claim the exemption applies to them because Fike Investments, LLC is the owner of the house rented by Chubb, and it is the only property owned by the company. In addition, the Fikes assert that the website Zillow.com, on which they listed the house for rent, was not a real estate broker at the time of their listing.

[12] As the party seeking the benefit of an exemption, the Fikes must demonstrate they meet the terms of the exemption. *See Ind. Dep't of Nat. Res. v. Krantz Bros. Const. Corp.*, 581 N.E.2d 935, 938 (Ind. Ct. App. 1991); *see also U.S. v. Columbus Country Club*, 915 F.2d 877, 882 (3d Cir. 1990) (where defendant country club claimed statutory exemption from Fair Housing Act, court stated: "Under general principles of statutory construction, '[o]ne who claims the benefit of an exception from the prohibition of a statute has the burden of proving that his claim comes within the exception.'" (quoting *Mills Music, Inc., v. Snyder*, 469 U.S. 153, 188 n.20 (1985) (White, J., dissenting))).

[13] To fulfill the requirement of Section 22-9.5-3-1(a)(1)(A), the Fikes assert that Fike Investments, LLC is the sole owner of the house that Chubb rented and that Fike Investments, LLC owns no other houses. The Fikes explain that the other three homes are owned either by Jim and Kim together or by Fike Rental Investments, LLC and are not relevant to this action.

[14] The Ultimate Authority concluded the Fikes are not exempt from application of the IFHA because they collectively "owned four separate single family residential properties." Appellants' App. Vol. 2, p. 26 (Appealed Order,

Conclusion of Law #6). Specifically, the Ultimate Authority determined that Kim owns or has a pecuniary interest in the rental proceeds from a total of four single-family properties, which exceeds the mandatory limit provided in Section 22-9.5-3-1(a)(1)(A). *See id.* The Ultimate Authority based its determination on the evidence that shows Kim owns two houses with Jim, is a member of Fike Investments, LLC which owns the house at issue here, and is a member, the president, and the registered agent of Fike Rental Investments, LLC which owns another house. Appellants' App. Vol. 3, pp. 61-62 (March 26, 2021 Order Granting Indiana Civil Rights Commission's Motion for Summary Judgment and Notice of Final Prehearing Conference,[3] Findings of Fact ## 11, 13, 15-17, 21).

[15] Nevertheless, a detailed analysis of Kim's interest in these four properties is not necessary to determine whether the Fikes are entitled to the exemption in this case. Rather, the application of the exemption here turns on the language of the statute. The first requirement in the exemption statute is that the house must be rented by *the owner*. *See* I.C. § 22-9.5-3-1(a)(1). While the evidence shows that Fike Investments, LLC is the record owner of the Hamilton Street house, Appellee's App. Vol. II, p. 149 (Quitclaim Deed), the evidence does not show that the house was rented by Fike Investments.

---

[3] The Appealed Order specifically incorporated all findings of fact from both the March 26, 2021 Order Granting Indiana Civil Rights Commission's Motion for Summary Judgment and Notice of Final Prehearing Conference and the May 9, 2022 Order on Parties' Cross Motions for Summary Judgment. Appellants' App. Vol. 2, p. 24 (Appealed Order, Findings of Fact ## 1, 2).

[16] The Fikes assert that "[a]t all times we have been acting as agents of Fike Investments, LLC, and not as individuals." Appellants' App. Vol. 2, p. 41 (Aff. in Support of Summary Judgment, ¶4). But "a person's belief or understanding is not an objective fact," and "[u]nder the objective theory of contracts, the intent relevant in contract matters is not a party's subjective intent but the outward manifestation of it." *Akin v. Simons*, 180 N.E.3d 366, 377 (Ind. Ct. App. 2021). The Fikes' contention that they were acting as agents of Fike Investments, LLC and not as individuals is merely a self-serving statement of their belief. It is not a statement of objective fact manifested in their lease, the Pet Addendum, or the eviction action against Chubb.

[17] The first sentence of Chubb's lease states: "THIS LEASE made this 28th day of April 2015, between *Jimmy W. Fike and Kimberly A. Fike, the 'Landlord'* herein, and . . . John Chubb the 'Tenant' herein." Appellee's App. Vol. III, p. 6 (emphasis added). And Jim and Kim did not sign the lease in their capacities as members of the LLC but, instead, signed the lease as "Landlord" without any further designation. *See id.* at 10. Further, the lease makes no reference at all to Fike Investments. *See id.* at 6-10. Similarly, a Pet Addendum that was executed the same day as the lease, identifies Jim and Kim as the landlords, bears their signatures without any designation of their corporate capacities, and contains no reference to Fike Investments. Appellee's App. Vol. II, p. 65 (Pet Addendum). And in the eviction action against Chubb, Jim and Kim are designated as the plaintiffs with no mention of Fike Investments or indication

they are members of the LLC acting on its behalf. *See id.* at 97, 98 (Aff. for Immed. Poss'n.; Notice of Claim).

[18]     If Jim and Kim intended to act as agents for the LLC and bind it to the lease, they should have signed the lease in their corporate capacities. *See Blackwell v. Superior Safe Rooms LLC*, 174 N.E.3d 1082, 1094 (Ind. Ct. App. 2021) (observing principle that identity of parties to contract is ascertained from examining written contract itself), *trans. denied*. However, they signed the lease as individuals, not as representatives of Fike Investments LLC. Once they executed the lease in this manner, the exemption was inapplicable because they are not the owners of the property. Further, while the evidence shows that Jim and Kim may have interacted with Chubb at subsequent times as representatives of the LLC, *see* Appellee's App. Vol. II, pp. 75, 79, 88 (Letters and Notice to Leave Premises), the fact remains that the LLC, the owner of the property, did not lease the property to Chubb as required for the exemption to apply under Section 22-9.5-3-1(a)(1).[4] In sum, in this transaction Jim and Kim confused and conflated themselves with their LLC.

---

[4] We observe that even if Kim and Jim had signed the lease as agents of the LLC, their status as members of the LLC would not preclude their personal liability for their own acts. The Indiana Business Flexibility Act controls the creation and operation of LLCs in our state. With regard to the personal liability of an LLC member, this act provides:

> A member, a manager, an agent, or an employee of a limited liability company is not personally liable for the debts, obligations, or liabilities of the limited liability company, whether arising in contract, tort, or otherwise, or for the acts or omissions of any other member, manager, agent, or employee of the limited liability company. *A member, a*

[19] Thus, having determined that the Fikes are not entitled to the Section 22-9.5-3-1 exemption, we conclude the Ultimate Authority's exemption determination is supported by substantial evidence. Accordingly, we need not address whether Fike Investments LLC owns or has an interest in more than three single-family houses or whether Zillow.com was a real estate broker at the time of this listing.

## II. Emotional Distress Damages

[20] The Fikes next assert the evidence does not support the award of emotional distress damages to Chubb. Particularly, they claim that Chubb submitted no evidence of emotional distress and that the award was based solely on presumptions and conclusory statements.

[21] As with our evaluation of the exemption determination, our review of this decision is limited such that we do not reweigh the evidence, judge witness credibility, or substitute our judgment for that of the agency. *Ind. Dep't of Nat. Res.,* 132 N.E.3d at 401. We are bound by the agency's findings of fact if they are supported by substantial evidence. *Id.* And, as before, the Fikes have the

---

manager, an agent, or an employee of a limited liability company may be personally liable for the person's own acts or omissions.

Ind. Code § 23-18-3-3(a) (1993) (emphasis added). Given the evidence of Jim and Kim's actions in this case as individuals rather than members of the LLC, they would be personally liable for any obligations arising therefrom. *See, e.g.*, *Pazmino v. Bose McKinney & Evans, LLP*, 989 N.E.2d 784, 786-87 (Ind. Ct. App. 2013) (applying plain language of I.C. § 23-18-3-3(a) to determine whether evidence established that employee of LLC requested firm's services on his own behalf or if he requested firm's services on behalf of LLC).

burden of showing the invalidity of the agency's action.  *See id.*; I.C. § 4-21.5-5-14(a).

[22]   In fashioning a remedy under the ICRL, the Commission is authorized to award damages for emotional distress, Ind. Code § 22-9-1-6(j)(1) (2014); *Ind. Civil Rts. Comm'n v. Alder*, 714 N.E.2d 632, 637 (Ind. 1999); yet there is a dearth of case law from our state courts on the subject.  Nevertheless, we may look to federal statutes, cases, and policy statements for guidance as the IFHA borrows heavily from the federal Fair Housing Act and explicitly declares that one of its purposes is "[t]o provide rights and remedies substantially equivalent to those granted under federal law."  *Furbee v. Wilson*, 144 N.E.3d 801, 806 (Ind. Ct. App. 2020); Ind. Code § 22-9.5-1-1(3) (1990).  Accordingly, we turn to a federal decision often cited for guidance.

[23]   In *U.S. v. Balistrieri*, 981 F.2d 916, 932 (7th Cir. 1992), the court clarified that an injured person's testimony may, by itself, provide sufficient evidence of emotional distress.  The court explained that:

> in determining whether the evidence of emotional distress is sufficient to support an award of damages, we must look at both the direct evidence of emotional distress and the circumstances of the act that allegedly caused that distress.  *The more inherently degrading or humiliating the defendant's action is, the more reasonable it is to infer that a person would suffer humiliation or distress from that action*; consequently, somewhat more conclusory evidence of emotional distress will be acceptable to support an award for emotional distress.

*Id.* (internal citation omitted) (emphasis added). Further, the court noted that the factfinder, which in this case was the ALJ:

> is in the best position to evaluate both the humiliation inherent in the circumstances and the witness's explanation of his injury. Moreover, the [factfinder] is able to examine the witness personally . . . [and] may glean as much if not more about a witness's emotional state from the witness's demeanor than from his attempts to explain the nature of his injury in words.

*Id.* at 933.

[24] At the evidentiary hearing, Chubb testified that when he was evicted he rented two storage units because he had no place to go. Tr. Vol. 2, p. 17. He moved his belongings into one unit, and he lived in the other. *Id.* at 18. The storage units had no running water or plumbing, and, because residing in a storage unit is not permitted, he arrived to the unit late and left early. *Id.* at 18, 19. He lived this way for two and one-half weeks. *Id.* at 19. Chubb testified that "it was very difficult to find another place to live, especially when you have eviction on your record." *Id.* at 18. When questioned by his attorney about how Jim and Kim's behavior and the eviction made him feel, Chubb explained:

> Q.    Let's talk about the Fikes' behavior during this eviction. How did -- how do you feel the -- how did the Fikes' behavior make you feel?
>
> A.    Well, I felt -- what is the word? I felt hated, because they wouldn't talk to me, they would only talk to [Chubb's roommate].

. . . .

Q.      So, can you explain to us how you felt having -- after the
eviction and having to live in the trailer -- or at a storage unit at
that time?

A.      How I felt?

Q.      And how you --

A.      After I got a copy of the hearing, I went through it again
trying to figure out what happened, and I was just a miserable
wreck.  I don't know how to explain.  I really don't.

*Id.* at 34, 25.

Based on the evidence, the ALJ found, and the Ultimate Authority later
adopted, that:

8.  Chubb surreptitiously lived in the second storage unit for a
period of two and a half weeks with no toilet or running water as
he was unable to rent affordable housing for a period of time, due
to his limited income and the eviction proceeding on his credit
record.

9.  Chubb suffered inconvenience, embarrassment and emotional
distress caused by living in the storage unit for two and a half
weeks.  A person without an emotional or mental disability
would find such living circumstances challenging and degrading.
A person suffering from panic disorder, syncope, post-traumatic
stress disorder and agoraphobia, such as Chubb, would find such
living circumstances especially challenging and upsetting.

Appellants' App. Vol. 2, pp. 25-26 (Appealed Order, Findings of Fact ##8, 9). As a result of these findings, the Ultimate Authority determined that Chubb was entitled to damages for emotional distress and awarded him $25,000 "as compensation for emotional distress caused by living in a storage unit for two and a half weeks because of the unlawful and retaliatory eviction." *See id.* at 28 (Appealed Order, Conclusion of Law #18); *id.* at 29 (Appealed Order, ¶3).

[26] Contrary to the Fikes' assertions, Chubb's testimony provides direct evidence of his emotional distress. He felt "hated" and was a "miserable wreck." Tr. Vol. 2, pp. 34, 25. And, as acknowledged by the ALJ, there is a logical and permissible inference that it would be distressing for anyone in good mental health to live in a storage unit for two and one-half weeks without plumbing or running water, much less someone with mental health issues. This evidence supports the award for emotional distress.

[27] Moreover, our review of the record reveals additional distressing circumstances. Chubb submitted a letter to the Fikes from his treating physician confirming his need for an emotional support animal, and in response, Jim and Kim told Chubb they "'would not take that BS from your doctor.'" Appellee's App. Vol. III, p. 184 (May 9, 2022 Order on Parties' Cross Motions for Summary Judgment, Finding of Fact ##8, 12). We find this comment to be inherently degrading and humiliating, making it more reasonable to infer that Chubb suffered emotional distress as a result of Jim and Kim's actions. We conclude there is substantial evidence supporting the award of damages for emotional distress to Chubb.

## III. Civil Penalty

[28] Lastly, the Fikes argue the Ultimate Authority acted arbitrarily and capriciously by imposing a civil penalty, and they urge us to reverse the determination. "'A decision is arbitrary and capricious when it is made without consideration of the facts and lacks any basis that may lead a reasonable person to make the decision made by the administrative agency.'" *Am. Senior Cmtys. v. Ind. Fam. & Soc. Servs. Admin.*, 206 N.E.3d 495, 499 (Ind. Ct. App. 2023) (quoting *Ind. Real Estate Comm'n v. Martin*, 836 N.E.2d 311, 313 (Ind. Ct. App. 2005), *trans. denied*), *trans. denied*. As before, the burden of demonstrating the invalidity of the agency action is on the party who asserts the invalidity. *See Ind. Dep't of Nat. Res.,* 132 N.E.3d at 401; I.C. § 4-21.5-5-14(a).

[29] Following oral argument, the Ultimate Authority modified the Recommended Order of the ALJ, in part, by:

> Adding a new Paragraph to the Decision and Order section to issue a civil penalty under IC 22-9.5-6-15 against [the Fikes] in the amount of $10,000.00 based on the findings of fact, the arguments presented at oral argument, and its desire to be consistent with previous decisions rendered by the Commission for similar cases.

Appellants' App. Vol. 2, p. 33 (ICRC Attachment A to Appealed Order, ¶3). As cited by the Ultimate Authority, Indiana Code section 22-9.5-6-15 (1990) provides for a civil penalty, stating in relevant part:

> (a) If the commission determines at a hearing under section 14 of this chapter that a respondent has engaged in or is about to

engage in a discriminatory housing practice, the commission may order the appropriate relief, including actual damages, reasonable attorney's fees, court costs, and other injunctive or equitable relief.

(b) To vindicate the public interest, the commission may assess a civil penalty against the respondent in an amount that does not exceed the following:

(1) Ten thousand dollars ($10,000) if the respondent has not been adjudged by order of the commission or a court to have committed a prior discriminatory housing practice.

[30] In the argument section of their brief, the Fikes make allegations regarding the Ultimate Auhtority's assessment of a civil penalty, but they fail to show that the decision was made without consideration of the facts and that it lacks any basis that would lead a reasonable person to make such a decision. *See Am. Senior Communities*, 206 N.E.3d at 499.

[31] The Ultimate Authority's authorization to assess a civil penalty is grounded in statutory language that is clear on its face and, thus, it cannot be said there was no reasonable basis for the action. Accordingly, we conclude that imposition of the civil penalty was not arbitrary and capricious.

[32] Given that Jim and Kim signed the lease as individuals and not as agents of Fike Investments, LLC, they are personally liable for their actions and omissions under the lease. Accordingly, Jim and Kim, not the LLC, are responsible for the damages and penalties imposed by the Ultimate Authority.

## Conclusion

[33] Based upon the foregoing, we conclude that the Ultimate Authority's exemption determination and award of damages for emotional distress are both supported by substantial evidence. Additionally, we conclude the Ultimate Authority's assessment of a civil penalty was not arbitrary and capricious, and we determine that Jim and Kim Fike are personally liable for the damages and civil penalty imposed by the Ultimate Authority.

[34] Affirmed and remanded with instructions that the Ultimate Authority modify its final order to provide that the determination of liability, the award of damages, and the imposition of the penalty are against only Jim Fike and Kim Fike.

Pyle, J., and Kenworthy, J., concur.

ATTORNEY FOR APPELLANTS

Robert J. Palmer
May Oberfell Lorber
Mishawaka, Indiana

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Attorney General of Indiana

Abigail R. Recker
Deputy Attorney General
Indianapolis, Indiana